IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES HENRY HARRISON, JR., *Plaintiff*, v. UNEQUAL TECHNOLOGIES COMPANY, *Defendant*. | Civil Action No. 2:24-cv-1204<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff James Henry Harrison, Jr. ("Harrison") brought an action against Defendant UNEQUAL Technologies Company ("Unequal") under the Lanham Act of 1946 as amended, 15 U.S.C. § 1051 *et. seq.* (the "Lanham Act"), and the common law, seeking to remedy the unlawful false endorsement, infringement of the right of publicity, unfair competition, breach of contract, and unjust enrichment of Unequal to Harrison's personal and commercial detriment. (ECF No. 1). Unequal filed a motion to dismiss or, in the alternative, a motion to transfer venue. (ECF No. 7). For the following reasons, the Court will deny Unequal's motions.[1]

### I.   FACTUAL BACKGROUND

Harrison is a former linebacker for several National Football League ("NFL") teams, one of which was the Pittsburgh Steelers. (ECF No. 1, ¶ 8). Unequal approached Harrison in or around 2011, due to his ability and notoriety as a professional football player, with a request that he promote their developing line of athletic safety equipment. (*Id.* at ¶ 9). Harrison's initial

---

[1] Unequal's motion to dismiss is based on improper venue. Because the Court finds that venue in the Western District is proper, the motion to dismiss is denied.

1

meeting with Unequal's Chief Executive Officer Robert A. Vito ("Mr. Vito"), took place at McCormick & Schmick's on the South Side of Pittsburgh in the Western District of Pennsylvania ("Western District"). (ECF No. 10-1, ¶¶ 5, 6). Following this meeting, Harrison tested Unequal's equipment at a Steelers' practice session, alongside teammate Charlie Batch, and decided to endorse Unequal's product, the Gyro Padded Football Helmet ("the Product"). (*Id.* at ¶¶ 6, 7). Thereafter, Mr. Vito and Unequal representatives visited the Steelers' facility in person several times, provided the Product to various players and set it up in the equipment room at the Steelers' training camp in Latrobe, Pennsylvania, hosted an Unequal investor meeting at the Eleven restaurant in Pittsburgh's Strip District, and had contact with Dr. Joseph Maroon and the Concussion Clinic at the University of Pittsburgh Medical Center. (*Id.* at ¶¶ 8, 9, 11, 12).

Harrison and Unequal entered into (1) a Promotional License Agreement dated November 18, 2011 (the "First Agreement"), and subsequently renewed that arrangement in (2) a Promotional License Agreement dated July 1, 2016 (the "Second Agreement" and, together with the First Agreement, the "Agreements"). (ECF No. 1, ¶ 10). Each of these Agreements granted Unequal a license to use Harrison's name, image, likeness, and any other means of endorsement by Harrison in connection with the promotion and sale of products designed for Harrison (the "Athlete Identification"). (*Id.* at ¶ 11). However, the Agreements granted these license rights only for specifically defined terms, stating: "[f]rom and after the termination of the Term, all of the rights of Unequal to the use of the Athlete Identification shall cease absolutely and Unequal shall not subsequently use or refer to the Athlete Identification in advertising or promotion in any manner whatsoever." (*Id.* at ¶¶ 12, 13). The term of the First Agreement expired on June 30, 2014, and the term of the Second Agreement expired on February 28, 2018. (*Id.*)

Harrison alleges that despite the specific, end-date terms in the Agreements, Unequal continued to use his Athlete Identification, without right or his consent, after the term of the latest Agreement in February 2018. (ECF No. 7, ¶ 15). Harrison alleges specifically that Unequal willfully misappropriated his name, image, and likeness by continuing to promote Unequal products, the use of his Athlete Identification as an "Ambassador," and through the "James Harrison Contest," all accessible on Unequal's website. (ECF No. 1, ¶ 14). According to Harrison, this misappropriation has occurred continually since February 2018, for more than six years. (*Id.* at ¶ 18).

Harrison filed this action on August 22, 2024, asserting claims for false endorsement under the Lanham Act (Count I), infringement of the right of publicity (Count II), common law unfair competition (Count III), breach of contract (Count IV), and unjust enrichment (Count V). (ECF No. 1). Unequal moved to dismiss under Rule 12(b)(3). (ECF No. 7).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 12(b)(3) is the proper vehicle for seeking a dismissal only when venue in the chosen forum is improper under the federal statutes, *see Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 55 (2013), although the Court retains the discretion to transfer, rather than dismiss, were it to find venue improper.[2] A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper. *See Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434

---

[2] If venue is inappropriate, a court may either dismiss the action or transfer it to the court that has appropriate venue. 28 U.S.C. § 1404; 28 U.S.C. § 1406. Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1404(a) provides for transferring a case in which both the original and the requested venue are proper. *Id.*

F. App'x 83, 86 (3d Cir. 2011); *see also Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982).

In deciding a motion to dismiss and/or transfer for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the pleadings. *Heft v. AAI Corp.,* 355 F.Supp.2d 757, 762 (M.D. Pa. 2005) (citing *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002); *Myers,* 695 F.2d at 724 (footnote omitted). In addition, "[t]he parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft,* 355 F.Supp.2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 142 & n. 1 (3d Cir. 1992); *Myers,* 695 F.2d at 724). In either event, the Court is required to view the facts in the light most favorable to the Plaintiff. *Id.* (citing *Carteret* and *Myers, supra*). Finally, in "ruling on defendant's motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

In this case, Harrison has submitted four declarations in opposition to Unequal's motion. Unequal's reply disputes how the allegations in those declarations should be weighed by the Court vis-à-vis the venue analysis but does not dispute their factual accuracy. Nor did Unequal request the opportunity to supplement the factual record with an evidentiary hearing. Thus, while giving primary weight to the allegations in Harrison's complaint, the Court will also consider additional factual assertions contained in the declarations.

### III. ANALYSIS

**A. Venue is proper in the Western District.**

Fed. R. Civ. P. 12(b)(3) is the proper vehicle for seeking a dismissal only when venue in the chosen forum is improper under the federal statutes, *see Atlantic Marine Const. Co. v. U.S.*

*Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 55 (2013). The propriety of venue is generally governed by 28 U.S.C. § 1391(b), which provides that a civil action may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

The Court will first examine whether venue is proper under 28 U.S.C.A. §1391(b)(1). Under that subsection, venue may be brought in a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. For purposes of venue under § 1391, in a state that has more than one judicial district, and a corporation defendant that is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that state within which its' contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts. 28 U.S.C.A. 1391(d). "Thus, to determine if venue is proper under 28 U.S.C.A. § 1391(b)(1), the Court must engage in a legal fiction wherein it analyzes whether the Western District could exercise personal jurisdiction" over the corporate defendant "as if it were an independent state." *Barton v. Portfolio Recovery Assocs., LLC*, No: 2:20-cv-464, 2020 WL 4340167, at *2 (W.D. Pa. July 28, 2020). Thus, the Court must determine, under this fiction,

whether the hypothetical state of the Western District would be able to exercise jurisdiction over Unequal.

      a. <u>The Western District lacks hypothetical general jurisdiction over Unequal under 28 U.S.C. § 1391(b)(1).</u>

As explained above, to determine whether venue is proper under 28 U.S.C. § 1391(b)(1), the Court must engage in a legal fiction wherein it analyzes whether the Western District could exercise personal jurisdiction over Unequal as if it were an independent state. *Barton*, 2020 WL 4340167 at *2. General jurisdiction arises when the defendant corporation's affiliations with a state are so "continuous and systematic" as to render them essentially "at home" therein. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (*See also Int'l Shoe Co. v. State of Wash., Off. of Unemp't Comp. & Placement*, 326 U.S. 310, 317 (1945)). The state where a corporation is fairly regarded as "at home" is "generally restricted to the corporation's state of incorporation or the state of its principal place of business." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022) (*citing Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). The Supreme Court of the United States has advised:

> With respect to a corporation, the place of incorporation and principal place of business are paradigm…bases for general jurisdiction. Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. ("Simple jurisdictional rules…provide greater predictability"). These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler*, 571 U.S. at 137 (internal citations omitted).

Under Rule 4(e), the law of the forum in which a federal district court sits controls the analysis of personal jurisdiction under its long-arm statute. Fed. R. Civ. P. 4(e). The Court sits in Pennsylvania, therefore, Pennsylvania law controls. Pennsylvania's long-arm statute allows the commonwealth to exercise jurisdiction "to the fullest extent allowed under the Constitution

of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Fischer*, 42 F.4th at 383 (*citing* 42 Pa. C.S.A. § 5322(b); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)). The boundaries set forth on personal jurisdiction by Pennsylvania's long-arm statute are coextensive with those imposed by the Fourteenth Amendment. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The Due Process Clause of the Fourteenth Amendment only authorizes a court to exercise personal jurisdiction if a defendant purposefully established minimum contacts that have a substantial connection with the forum. U.S. CONST. Amend XIV; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citing cases); *Int'l Shoe Co.*, 326 U.S. at 319. For there to be general jurisdiction, a defendant must have "continuous and systematic" contacts with a state. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Harrison has not pled that Unequal has its principal place of business in the Western District. As set forth in Harrison's complaint, Unequal is a corporation having its principal place of business in Glen Mills, Pennsylvania which falls within the Eastern District of Pennsylvania ("Eastern District"). (ECF No. 1, ¶ 3). Harrison has not pled that Unequal has any place of business in the Western District. Rather, he has pled that due to its alleged advertising and solicitation of customers within the Western District, hosting of investors in the Western District, fulfillment of online orders purchased by residents of the Western District, and shipment of orders to himself and customers [Green and McCabe] in the Western District, Unequal can be deemed "at home" in the Western District. (ECF No. 10, p. 5); (ECF No. 11, p. 2).

Further, Harrison has not pled continuous and systematic contacts with the Western District that would allow a finding of general jurisdiction. The fact that the relationship between

Harrison and Unequal was negotiated in the Western District is not sufficient to establish general jurisdiction. Further, "merely placing products for sale on a website for consumers to purchase does not provide sufficient minimum contacts to establish general jurisdiction, where there is no evidence that Defendants targeted customers in the forum." *Farkas v. Rich Coast Corp.*, 2014 WL 550594, at *12 (W.D. Pa. Feb. 11, 2014) (*citing Molnlycke Health CareAB v Dumex Med. Surgical Prods. Ltd.*, 64 F.Supp.2d 448, 451 (E.D. Pa. 1999)). The instances pled by Harrison do not exhibit the requisite frequency to establish that Unequal's contacts were continuous and systematic with this forum. They do not establish the minimum contacts required for the Western District to exercise general personal jurisdiction over Unequal.

      b. <u>The Western District possesses hypothetical specific jurisdiction over Unequal under 28 U.S.C. § 1391(b)(1).</u>

Specific jurisdiction arises from a defendant's forum-related activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8-9 (1984). To establish specific jurisdiction, the plaintiff must satisfy the following three requirements: (1) the defendant "purposefully directed [its] activities at the forum"; (2) the litigation arises out of or relates to at least one of those activities; and (3) the court's exercise of jurisdiction would comport with traditional notions of "fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). The defendant must reasonably anticipate being haled into the court in that forum. *Vetrotex*, 75 F.3d at 151. Further, the purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (*citing Helicopteros Nacionales*, 466 U.S. at 417).

The Court holds that this litigation arises from conduct that Unequal purposefully directed to this forum. Harrison was specifically targeted by Unequal here in the Western District, where he resides and where he was a member of the Pittsburgh Steelers. (ECF No. 10-1, p. 1). Robert A. Vito, Unequal's chief executive officer, came to Pittsburgh to meet with Harrison at a restaurant near the Steelers' practice facility. (*Id.*). After that meeting, Harrison agreed to endorse Unequal's product. (*Id.* at 2). As a direct result of this meeting, Harrison signed the First Agreement (that was the predecessor to the Second Agreement). (*Id.*). Afterwards, Mr. Vito and other Unequal representatives visited the Western District numerous times, both to the Steelers' facility in Pittsburgh and the training facility in Latrobe, Pennsylvania (also in the Western District). (*Id.*). There is no question that Unequal purposefully directed action into the Western District to secure Harrison's endorsement. Stated differently, those contacts gave rise to Harrison's endorsement pursuant to the Agreements. That endorsement, and the terms of the Agreements, form the basis of Harrison's action.

Unequal purposefully directed contact within the Western District following Harrison's execution of the Agreements. These contacts were not fortuitous or unrelated, but rather, specifically concerned the product endorsed by Harrison and, indeed, his endorsement. For example, from time-to-time Unequal shipped products to Harrison at his home in the Western District. (ECF No. 10-2, p. 2). It also donated products to Harrison's charitable foundation located in the Western District. (*Id.* at 2-3). There is no question that Unequal's contacts with the Western District, not only with respect to its product, but with Harrison's endorsement, were "purposefully directed" at the forum for Unequal's gain.

Finally, the complaint and declarations submitted by Harrison aver that after the Agreements lapsed, Unequal continued to use his image and endorsement to market its product

9

on its website. Further, he and the declarants represent that Unequal shipped its product, with Harrison's image, to addresses in the Western District.

After reviewing all of the allegations with respect to Unequal's contact with the Western District, the Court holds that, if it was a hypothetical state, Unequal would be subject to specific personal jurisdiction in its courts. All the claims asserted in this case arise out of Harrison's endorsement of Unequal's product and Unequal's alleged misconduct with respect to that endorsement. Unequal specifically sought out Harrison in the Western District. It met with him in the Western District to secure Harrison's endorsement. It repeatedly visited the Steelers' facilities in the Western District with respect to its product. It shipped the endorsed product to Harrison and to his charity in the Western District. Finally, it continuously advertised in the Western District and shipped the allegedly infringing product to customers in the Western District. These were not "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. Rather, Unequal "purposefully directed [its] activities at the forum," the litigation "arises out of or relates to at least one of those activities," and the court's exercise of jurisdiction would comport with traditional notions of "fair play and substantial justice." *D'Jamoos*, 566 F.3d at 102. In light of this, Unequal "must reasonably anticipate being haled into the court in [this] forum." *Vetrotex*, 75 F.3d at 151.

Because the Court would be able to exercise personal jurisdiction over Unequal if the Western District was a hypothetical separate state, venue is proper under 28 U.S.C. §1391(b)(1). Because the Court has determined that venue is proper under 28 U.S.C. §1391(b)(1), it is unnecessary to examine subsections (b)(2) and (b)(3).

B.      **The Court declines to transfer this action under 28 U.S.C. §1404.**

In the alternative to its argument that venue is improper in the Western District, Unequal argues that venue would be more convenient in the Eastern District. A party may move to transfer a civil action pursuant to § 1404, which provides in relevant part as follows: "[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Generally, "'[t]he burden of establishing the need for transfer ... rests with the movant,' and 'in ruling on defendants' motion the plaintiffs choice of venue should not be lightly disturbed.'" *Steinmetz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 220 F. Supp. 3d 596, 600 (E.D. Pa. 2016) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quotation and citation omitted).

In determining whether to transfer a case pursuant to Section 1404(a), there "is no definitive formula or list of the factors to consider." *Jumara*, 55 F.3d at 879. The United States Court of Appeals for the Third Circuit has delineated several private and public factors that courts must balance when determining whether to transfer a case under the discretionary transfer statute. *Id.* at 879-880. The private factors include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Id.*

11

at 879. Moreover, the Court must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive" for the parties. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013) (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). The public factors include (1) the enforceability of the judgment; (2) the relative administrative difficulty in the two fora resulting from court congestion; (3) the local interest in deciding local controversies at home; (4) the public policies of the fora; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Jumara*, 55 F.3d at 879–80).

The Court holds that the above-listed factors weigh strongly against transfer. As to the private factors, Harrison filed this action in the district where he resides, and it is his choice of forum. Unequal wants this case to be transferred to its home forum. Unequal's preferred forum is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *EVCO Tech and Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citations omitted). As explained above, the relationship giving rise to Harrison's claims arose in the Western District. Further, the actionable conduct occurred both within and outside of the Western District. The Court likewise finds that the location of witnesses and exhibits do not weigh in favor of transfer from one Pennsylvania district to another. Balancing all of the private factors, the Court holds that Unequal has not offered a convincing argument that would upset Harrison's choice of forum.

As to the public interest factors, factor numbers four and five have minimal bearing on the Court's analysis. Harrison brings a mixture of federal and state law claims. This Court and the Eastern District are equally versed in both. Nor does public policy weigh in favor of another Pennsylvania district any more than it does here. Likewise, factor one does not weigh heavily in

the analysis. The facts of this case present no concerns with respect to the enforceability of any judgment. Under public factors two and three, the Court must consider the practical considerations that could make the trial easy, expeditious, or inexpensive, as well as considerations of administrative difficulty resulting from court congestion. None of these factors are implicated in the circumstances of this case, much less warrant a transfer. The Court is more than able to facilitate the easy, expeditious and inexpensive resolution of this case.

Neither the private nor the public factors used by the Third Circuit to analyze a request for a transfer of venue under 28 U.S.C. §1404 warrant transfer. As such, Unequal's motion will be denied.

### IV.   CONCLUSION

For the foregoing reasons, Unequal's motion – to dismiss or transfer venue - will be denied. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

 4/21/25
_____
Dated